## JOEL R. CROW v. HOUCK'S MISSOURI & AR· KANSAS RAILWAY COMPANY, Appellant.

### Division One, May 30, 1908.

1. **NEGLIGENCE: Permission to Look Over Engine.** Permission by the conductor of a freight train to the engineer of a crippled engine, which was being towed to the repair shops, to "look over his engine" and an assurance that he would have plenty of time to do so, as alleged in the petition, was not a license or permission to him to crawl under the trucks of the engine for the purpose of repairing the truck cellar; and the doing of that, at night, without notifying those in charge of the train of his intention of doing so, was such contributory negligence as precludes a recovery for injuries sustained by the backing up of the train against the engine while he was under it. The permission to look over the engine cannot be tortured into a permission to go under it to make repairs in the cellar truck which an examination might discover to be defective. To assume such a dangerous position without notifying the train men of his intention to do so, was gross negligence.

2. ————: ————: **Pleading.** And a petition which states that the engineer went under the engine, but fails to state that he gave the trainmen notice of his intention to do so, shows on its face such contributory negligence as bars his recovery.

3. ————: ————: **Implied: Pleading.** If the permission to "look over his engine," implied permission to go under it and was accepted and understood by the train men to so mean, that fact should be alleged in the petition; otherwise, it fails to state a cause of action.

4. ————: **Defendant's Employee: Two Corporations.** Although plaintiff was an employee of one railroad corporation, and the conductor in charge of a train which was towing to the repair shops plaintiff's engine over the lines of another corporation was in the employ of this other company, yet where the facts disclose that the two roads were part of one general railroad system, operated under one general management, and that the general manager of the entire system ordered plaintiff to leave his road and take his disabled engine, which was the property of the defendant, to the repair shops, over the defendant's line, it will not be held as a matter of law that plaintiff was not an employee of defendant; but the question is one for the jury, under proper instructions.

5. ————: **Instructions: Assumption of Facts.** The instruction designed to cover the whole case should not assume as true disputed facts.

6. ———: ———: **Departure: Employee.** Where the petition charges that plaintiff was an employee of defendant, an instruction which authorizes the jury to find for him, even though they might find that he was not an employee of defendant but of another corporation, is erroneous, and a clear departure from the issues presented by the petition.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED.

*Giboney Houck* and *John A. Hope* for appellant.

(1) The court erred in overruling defendant's objection to the introduction of any evidence on the ground that plaintiff's petition did not state facts sufficient to constitute under the law any cause of action, which objection was interposed at the beginning of the trial. According to this petition, the train had stopped at Morley Station on the railroad, and the conductor asked the plaintiff if he desired to look the engine over, he told the conductor that he would do so if he had time, and the conductor informed him that he would have all the time he wanted. This permission to look the engine over is the sole and only explanation disclosed by the petition for the extraordinary conduct of the plaintiff in going under the engine, laying himself across the tracks between the wheels of the engine, and in this position working on the trucks. The petition nowhere alleges that the conductor, or any member of the train crew, knew, or had the least intimation, that plaintiff intended to put himself in a position of such danger. If the conductor or any member of the train crew knew that plaintiff was under the engine at the time the train was forced backward, the petition does not disclose it. This petition states an exceptionally good case of flagrant contributory negligence on the part of the plaintiff but fails utterly to show any negligence on the part of defendant, or any mem-

ber of its train crew. Hurst v. Railroad, 163 Mo. 309; Mackey v. Mill Co., 210 Ill. 215. (2) The court erred in refusing to instruct the jury at the close of plaintiff's evidence in chief that under the pleadings and evidence plaintiff was not entitled to recover, and to return a verdict for the defendant, as asked for in defendant's refused instruction numbered 1. (a) As the very foundation of plaintiff's case it was necessary for him to prove the allegation in his petition that he was in the employ of defendant Houck's Missouri & Arkansas Railroad Company. The answer denied under oath the allegation of the petition. His suit is based on the theory that the relation of master and servant existed between defendant and him, and that the injury he sustained arose out of a violation by the defendant of the duties and obligations the defendant owed him as his master, that he was a fellow-servant with the various members of the train crew, all in the employ of defendant, and that the negligence of these fellow-servants caused his injury. Plaintiff failed to prove that he was an employee of defendant; in fact, his own testimony proved that the only railroad owned and operated by defendant extended from Morley to Cape Girardeau, that the line of railroad from Morehouse south was under the control of and operated by the St. Louis, Kennett & Southern Railroad Company; that he had never been at work on the railroad north of Morehouse; that the disabled engine No. 4 was a part of the equipment of the lines south of Morehouse, which lines belonged to the St. Louis, Kennett & Southern Railroad Company. According to his own testimony, his contract of employment was made with the master mechanic of the St. Louis, Kennett & Southern Railroad, and he was paid for his services at Kennett by checks on the Kennett bank signed by Mr. Ponder, superintendent of the St. Louis, Kennett & Southern Railroad. 1 Labatt on Master and Servant, sec. 6;

6 Thompson's Com. Law of Neg., secs. 7522, 7524; Carroll v. Railroad, 88 Mo. 239; Logan v. Central, etc., Co., 139 Ala. 548; Alabama, etc., Co. v. Williams, 140 Ala. 236. (b) Under plaintiff's own statement of the circumstances surrounding the accident, his injury resulted from his own contributory negligence. Weber v. Railroad, 100 Mo. 194. His testimony to the effect that before going under the engine he "gave the stop signal and got an answer" was irrelevant and incompetent; the petition contains no such allegation; and to allow this to be considered as a ground for charging defendant with negligence would be permitting plaintiff to seek a recovery on a ground not alleged in his petition. Walsheir v. Railroad, 71 Mo. 514; Feary v. Railroad, 162 Mo. 96; McLure v. Feldham, 184 Mo. 722. The petition alleged as the only ground of negligence on defendant's part that the conductor gave plaintiff permission to "look over the engine;" under this permission the conduct of plaintiff in working under the engine in the way he did was wholly inexcusable, and his injury was caused by his own negligence. Thompson's Com. Law Neg., sec. 7464; Hurst v. Railroad, 163 Mo. 322; Moore v. Railroad, 176 Mo. 528.

*Wilson Cramer, Robert L. Wilson* and *M. A. Dempsey* for respondent.

(1) The petition stated a cause of action, the evidence of plaintiff fully sustained its allegations and the peremptory instructions were rightly refused. (2) The allegation that Crow was in the employ of the defendant was merely matter of inducement and not essential to recovery. Lee v. Railroad, 1 Am. Neg. Rep. 208. (3) Moreover, because of the complicated relations existing between the various railroad corporations of the Houck system of railroads, there was sufficient evidence to support the allegations for the pur-

pose of this case.   (4)   And there was direct evidence
that for the purpose of looking after the dead engines
plaintiff had been actually employed by Barney Gill,
foreman of the H. M. & A. shops, and was performing
work in the line of such employment at the time of his
injury.   (5)   Notice to the crew that plaintiff was
about to inspect the engines put the train crew on
guard, and of itself relieved plaintiff from the charge
of contributory negligence.   Gibson v. Railroad, 5
Am. Neg. Rep. 325; Edington v. Railroad, 204 Mo. 67.
(6)   It is not necessary that defendant should actually
know the danger to which plaintiff is exposed.   It is
enough that, if having sufficient notice to put a prudent
man upon the alert, he does not take such precautions
as a prudent man would take under similar notice.
This rule is now almost universally accepted.   Rod-
gers v. Railroad, 117 Mo. App. 684; Lange v. Railroad,
115 Mo. 588.

WOODSON, J.—This suit was instituted to re-
cover damages for personal injuries received by plain-
tiff through the alleged negligence of the defendant.
The suit was brought in Scott county and taken on
change of venue to Dunklin county, where a trial was
had before the court and a jury, which resulted in a
verdict and judgment for the plaintiff for the sum of
ten thousand dollars.   After an unsuccessful move for
a new trial and in arrest of judgment, the defendant
duly appealed to this court.

As the sufficiency of the petition is assailed, it be-
comes necessary to set it out in this statement, which,
after omitting the formal parts, is as follows:

"That on the 8th day of November, 1901, and the
day following, he was in the employ of defendant rail-
road company as an engineer and had charge of engine
No. 4 on its said road, which he had been directed and

ordered by defendant to take from the town of More-house to the railroad shops at the city of Cape Girardeau for repairs; that while he was on his way with his said engine under the aforesaid orders, the same became disabled between Morehouse and the station of Crowder and he was unable to proceed further; that on the following day, November 9th, another of defendant's trains passing along said road undertook to tow plaintiff's engine No. 4 to the city of Cape Girardeau and on reaching the station of Morley made a stop; that while said train was standing still, at about the hour of eight o'clock at night, the conductor in charge thereof demanded to know of plaintiff whether he desired to look his engine over, and upon being told by plaintiff that he would do so if he had time, was informed by said conductor that he would have all the time he wanted, and thereupon plaintiff descended from his said engine No. 4 and began an examination thereof; that upon such examination he found that one of the bolts of the engine truck cellar had been lost, and, knowing that said engine could not safely proceed in that condition, he undertook to remedy the defect, relying upon the assurance of the conductor of said train that he would have plenty of time. And plaintiff further states that it was necessary to insert a new bolt in place of the one that had been lost, and plaintiff, for the purpose of making such repairs, took a position on the end of the ties behind the engine truck and had his arms extended underneath the engine in the act of holding up the engine truck cellar with a hammer handle while an assistant was inserting the bolt to be put in, when, suddenly, and without notice or warning to him, defendant, by its agents having in charge and operating said towing train, carelessly and negligently caused a number of freight cars to be violently forced back against the train in which his said engine was standing, thereby causing the wheels of the engine

truck to be run back rapidly and pass over his right arm so that the same was torn and mangled and the bones thereof crushed from the wrist to the elbow, and plaintiff was struck by some part of the engine about the head and face and sustained painful injuries and bruises.''

Defendant's amended answer contains a general denial and then proceeds as follows:

''2. For another and further answer defendant avers that plaintiff never was in defendant's service or employ in any capacity whatever, and that at the time mentioned in his petition plaintiff was merely a passenger on board defendant's freight train, with instructions from defendant's conductor and crew in charge of said freight train to stay in the caboose at the end of said train, and that such injuries as plaintiff received, if any, were caused solely by his own reckless conduct and negligence contributing directly thereto, in this, to-wit, that he left said caboose at nighttime and went to and extended his arm under an engine coupled in said freight train while cars were being switched from the side tracks and coupled with said freight train at Morley station on defendant's railroad, and thus received said injuries, all of which he did in violation of the said instructions of said train crew and without any persons having any notice or warning of his dangerous and reckless conduct or his said dangerous position. Wherefore, defendant again prays for judgment and that it may be dismissed with its costs.

''For another and further answer defendant says plaintiff never was employed by defendant as a locomotive engineer or in any other capacity, and avers that at the time mentioned in his petition plaintiff was in the service and employ of the St. Louis, Kennett & Southern Railroad Company, owning and operating a railroad separate and distinct from defendant's railroad, and that said St. Louis, Kennett & Southern

Railroad Company, desiring to have one of its disabled engines repaired, engaged defendant to haul the same to the railroad shops at Cape Girardeau, and defendant had its train crew to attach said disabled engine to defendant's freight train, and, with said disabled engine attached, defendant's train crew was proceeding with said train to the city of Cape Girardeau; that on said run to Cape Girardeau plaintiff accompanied said engine, not in defendant's service or employ, but as an employee and servant of the St. Louis, Kennett & Southern Railroad Company, accompanying its said disabled engine to the Cape Girardeau shops, and that he was directed and expected by defendant's train crew to ride and remain throughout said trip and run to Cape Girardeau in the caboose at the end of said freight train; that such injuries as plaintiff may have received, if any, were caused solely by his own recklessness and negligence contributing directly thereto in this, to-wit, that when said freight train reached the town of Morley and said train crew were engaged in the usual and ordinary switching of cars to and from its side tracks, plaintiff, in violation of said directions of defendant's train crew and without giving any notice or warning of any kind to any of said crew, recklessly and negligently left said caboose and went under and began work on the trucks of said disabled engine, and that, proceeding with the usual, ordinary and necessary switching at said town, cars were switched from the side tracks and coupled to said train on the main track, when, as the result solely of his own voluntary recklessness and negligence in leaving said caboose and going under said engine, as aforesaid, plaintiff received such injuries. Wherefore, defendant, having fully answered, again prays judgment and that it be dismissed with its costs.''

The facts of the case are few and practically undisputed, and are as follows:

The defendant, Houck's Missouri & Arkansas Railroad Company, was the first link in a system of railroads known as the "Houck's System," composed of various separate railroad companies, extending from Cape Girardeau, this State, to Leachville, in the State of Arkansas, with a branch to Kennett, Missouri. This first link ran from the Cape to Morley. Another, named the Morley & Morehouse Railroad Company, connected those two towns. From Morehouse south to Clarkton it was known as the St. Louis, Morehouse & Southern Railroad Company. At Clarkton it connected with the branch which leads over to Kennett. This branch road was incorporated under the name of the St. Louis, Kennett & Southern Railroad Company. This latter company had a road leading south from Morehouse to Leachville, upon which plaintiff was employed as an engineer and for whom he generally worked. Each of these companies was a separate and distinct corporation, but all were operated under the same management as one system of railroad. But two of those companies figure specially in this case. One is Houck's Missouri & Arkansas Railway Company, and the other is the St. Louis, Kennett & Southern Railroad Company. The former had repair shops at Cape Girardeau, and the latter at Kennett.

On November 8th, 1901, Crow was working on a Houck's Missouri & Arkansas engine south of Morehouse. On that date his conductor Hardy told him that Mr. Louis Houck, general manager, had ordered the engine taken to the Cape, because the flues had given out and the engine wasn't able to pull a full train. He was on his way to the Cape pulling a car of steel and Houck's Missouri & Arkansas engine No. 7, which was also disabled and was in charge of Barney Gill, foreman of the Houck's Missouri & Arkansas shops at Cape Girardeau. The flues sprung an extra leak and the

engine died out on the line; a work train shoved them on a side track at Crowder. On the morning of the 9th Barney Gill, before going in on the passenger train, gave Crow instructions, told him that an engine would come after them from the Cape and directed him and the fireman to see those engines into the Cape safe.

About six o'clock the local came along in charge of Tom Gill as conductor, picked up the two engines and car of steel, placing them at the rear of the train in front of the caboose. There were about twelve freight cars between the engine pulling the train and the dead engines. They proceeded on their way to Cape Girardeau, Crow and his fireman riding in the caboose with the train crew. When the engine whistled for Morley, Crow inquired of the conductor the name of the station, and upon learning it asked if he would have time to look the engines over. Gill told him that they had no business at Morley except to unload one box and that he would have plenty of time. When the train stopped all in the caboose got out, Crow taking a lantern walked up along side of the train to the dead engines, accompanied by his fireman and Conductor Gill. Crow proceeded to oil engine 7 while the fireman oiled one side of No. 4, Gill slowly walking away towards the head of the train. After oiling No. 7 and one side of No. 4, Crow discovered a hot engine truck and found that a cellar bolt on the right side of the forward truck had slipped out, the cellar dropping down at one side and losing the packing. The "cellar" on a truck is a receptacle placed underneath the bearing of the axle to hold oil and waste for the purpose of keeping the bearing properly oiled while in motion. If the cellar fails to perform its office the bearing becomes overheated and the "hot box" condition results. The steel of the axle is liable to become crystallized and to break under the strain of friction and the weight of the engine. All that is required is to slip a bolt of iron through the

holes already made in the iron of the cellar and the piece to which it is connected and then turn the protruding end of the bolt so that it cannot slip out. The cellar being on the inside of the wheel, it was necessary that Crow should work from underneath the engine while inserting and fastening the bolt, so, as an extra precaution, he took his lantern, and swung it across the track to give the stop signal. The stop signal given to a train not in motion means to "stop still, do not move until signaled to do so." Crow received an answer acknowledging his signal from somewhere near the upper end of the train, but the record does not show who it was that gave this answer or that it was intended as an answer to his signal, but he assumed it was given by some of the trainmen, and that it was an answer to his stop signal, and then proceeded to repair the engine, without notifying the conductor, engineer or any other person connected with the train that he intended to do so. While the fireman on the outside of the wheel prepared to insert the bolt, Crow lay across the rail between the wheels, the upper portion of his body being beneath the engine, held up the loose end of the cellar with a hammer handle so that the bolt would pass through the holes and was ready to turn the end to fasten it in place. Suddenly he heard the rumbling of the cars bumping against one another, and realizing that the forward end of the train had been put in motion he placed his right hand upon the ground, forced his body backward and out between the wheels before the motion of the train was communicated to his engine, but before he could withdraw his arm, the wheel caught it and passed over it. To save the arm from further mangling as the wheel slowly passed he reached it with his left hand and pulled out the remains of the right. The bones had been completely crushed and severed, and the amputation was made with a pair of scissors. In getting away from the

engine Crow was struck on the head by the cylinder box and badly hurt. A local physician at Morley bandaged the stump and Crow was taken in the caboose to Cape Girardeau. There the train stopped down in the yards and Gill and Crow walked to a boarding house up-town, where, when it was discovered that surgical treatment was necessary, admission was refused. They then walked to the hospital where a physician was called and performed the operation. He was confined in the hospital until December 30th. Two separate operations were performed. At the time of the trial Crow's arm frequently caused him pain.

The testimony on the part of the defendant showed that the rules of railroads required blue signals, a flag by day and a lantern by night, to be put out, front and rear, when a car is being repaired; but all the witnesses admitted that such rule applied only to a car set out on a side track in the yards and not to a train in operation upon the main line. Further it was shown that there were no blue lanterns on the trains. The defendant's witnesses, Gill and Lavey, and the fireman on the engine, stated that they did not see Crow's stop signal, but Gill and Lavey had their backs towards Crow. Gill admitted that he had given Crow permission to look his engine over, that he walked up with him to the dead engine and was only two or three cars ahead when the injury occurred.

At the close of plaintiff's evidence, and again at the conclusion of all the evidence in the case, the defendant asked an instruction in the nature of a demurrer to the evidence, each of which was by the court refused, and to the action of the court in so refusing them defendant duly excepted.

After overruling defendant's said demurrers, the court instructed the jury for the plaintiff as follows:

"1. The court instructs the jury that if you find from the evidence that plaintiff was employed by the

defendant as an engineer on its railroad and as such had charge of one of its engines which was being towed over said defendant's railroad in another of defendant's trains, and shall further find that it was the duty of the plaintiff under his employment to look after and keep his said engine in condition to be so towed to its destination, and you shall further find from the evidence that said train was stopped at or near the station of Morley, and while it was so stopped the conductor in charge of said towing train gave plaintiff the assurance that he would have ample time to examine his said engine before the train started, and you shall further find from the evidence that, acting upon said assurance, plaintiff thereupon examined his said engine and found that one of the engine cellar bolts thereof was lost and said engine was in need of repair, and that plaintiff, relying upon said assurance of said conductor, then undertook to repair said engine by inserting another cellar bolt, and you shall further find from the evidence that for the purpose of executing said work, it became and was necessary for plaintiff to place his body partly under said engine in a recumbent position, and that, while he was in such position, engaged in said work with due care and diligence on his part, the agents and employees of the defendant in charge of said train, knowing that plaintiff was engaged in looking after and attending to said engine, carelessly, negligently and without warning to the plaintiff, caused certain cars to be run back and against said train in which plaintiff's engine was standing, and that in consequence thereof the wheel of said engine rolled back and caught plaintiff's right arm, crushing the bones and rendering amputation below the elbow necessary, and plaintiff sustained other injuries about the head and face, then he is entitled to recover, and your verdict should be for the plaintiff.

"2. You are further instructed that, although you

may find from the evidence that plaintiff was not in the employ of defendant corporation, but was a servant of the St. Louis, Kennett & Southern Railroad Company or of the St. Louis, Morehouse & Southern Railroad Company, and that the disabled engine of which he had charge belonged to the St. Louis, Kennett & Southern Railroad Company or the St. Louis, Morehouse & Southern Railway Company, and if you further find that the defendant corporation undertook to pull said engine over its road to the city of Cape Girardeau, and that plaintiff was in charge of said engine, and that it was his duty to look after same, and attend to all repairs of same needful while said engine was so being towed, and that plaintiff was injured in the manner and under the circumstances detailed in instruction No. 1, given for plaintiff, while said disabled engine was being towed by defendant's train, then plaintiff is entitled to recover, and you will find the issues for the plaintiff.

"3. The court instructs the jury that if you find the issues for the plaintiff, you should assess his damages at such sum, not exceeding twenty-five thousand dollars, as from the evidence you may find and believe will be a fair compensation to him for the injuries he is shown by the evidence to have sustained, and that, in estimating such damages, you should take into consideration the physical pain and mental anguish occasioned by his injuries; the fact, if you so find, that his injuries are permanent, his physical deformity, and any diminution or impairment of his earning capacity, if any, which you may find from the evidence has been occasioned by his injuries."

Defendant objected and excepted to the giving of the above instructions and each of them.

The court gave the following instructions for defendant:

"A. In determining whether the defendant's

agents and servants negligently and carelessly handled its train of cars, or whether the injury to plaintiff was occasioned by their neglect and careless handling of defendant's train of cars, you are to consider all of the attending facts and circumstances, but you are in no wise at liberty to presume negligence or carelessness on the part of defendant from the mere happening of the accident. These are facts which require affirmative proof, and the burden of showing them, as well as the want of contributory negligence on the part of the plaintiff, rests upon the plaintiff.

"B. The jury are instructed that the plaintiff Crow was bound to exercise such care and prudence as might reasonably be expected of a man of his age and capacity under similar circumstances, and that the degree of care and prudence in avoiding danger is to be determined from the age and experience of the plaintiff in railroading; and if the jury believe from the evidence that plaintiff was a man of mature years, and an experienced locomotive engineer, they may take that fact into consideration in considering the question of negligence or carelessness on the part of said plaintiff.

"C. Negligence as used in these instructions means a want of such reasonable care as a person of ordinary prudence would be expected to exercise under all the existing circumstances in view of the probable danger of injury.

"D. If you find from the evidence that plaintiff began the work of inserting a cellar bolt in the truck of the disabled engine, and gave the train crew no warning of his position except to ask and receive from the conductor permission to look over, or to look around the engine, then the plaintiff did not exercise such reasonable care to avoid injury as a person of ordinary prudence should have exercised under similar circumstances, and he was guilty of negligence which

contributed directly to cause the injury to his arm, and your verdict should be for the defendant.

"E.   If you believe from the evidence that plaintiff was himself guilty of any negligence that contributed directly to the injury of which he complains, then he is not entitled to recover, even though you may further find that there was also negligence on the part of defendant's train crew."

The court refused the following instructions asked by defendant, to which refusal as to all and each defendant excepted:

"F.   Although the jury may find and believe from the evidence that the plaintiff Crow was struck and injured by a train of defendant's cars, yet that does not authorize the jury to find a verdict for the plaintiff in this action; and unless it has been proved to the satisfaction of the jury that, after said plaintiff had got under his engine, his dangerous situation was discovered by those in charge of the train, or that they could have seen it by the exercise of ordinary care and watchfulness, and have stopped the cars in time to have prevented the injury, then the finding must be for the defendant.

"G.   You are further instructed that before you can return a verdict in this cause for the plaintiff you must find and believe from the evidence that at the time of receiving the injury complained of in his petition plaintiff was in defendant's employ, and that when defendant's train stopped at Morley station defendant's trainmen negligently backed cars against a disabled engine, coupled into said train, on which engine plaintiff was at work, and that such negligence on the part of defendant's trainmen was the sole and direct cause of the injury to plaintiff, and that plaintiff was not himself guilty of any negligence that contributed directly to the injury. If plaintiff was guilty of any negligence contributing directly to cause the

injury he cannot recover, or if the injury was caused by the negligence on the part of both plaintiff and defendant, contributing directly thereto, plaintiff cannot recover, for however negligent defendant's employees may have been plaintiff cannot recover if he himself was guilty of any negligence that contributed directly to produce the injury he sustained.''

I.  The first assignment of error presented by appellant relates to the action of the court in admitting any evidence under the petition.  It is the contention of the appellant that the petition does not state facts sufficient to constitute a cause of action against it.

The petition alleges in substance that when the train reached Morley, the conductor asked plaintiff if he desired to *look his engine over,* and, upon being told that he would if he had time, was informed by the conductor that he would have all the time he wanted, and that thereupon he descended from the caboose and began an examination thereof; that upon discovering that one of the bolts of the engine truck cellar had been lost, he undertook to remedy the defect, relying upon the assurance of the conductor of said train that he would have plenty of time.  And that in order to make the repairs he took a position on the end of the ties behind the engine truck and had his arms extended underneath the engine in the act of holding up the engine truck cellar with a hammer handle while an assistant was inserting the bolt, when suddenly, and without warning to him, defendant negligently caused a number of cars to be violently forced back against the train in which his engine was standing, thereby causing the wheels of his engine truck to be run back rapidly and pass over his arm, and thereby inflicted the injuries complained of.

It is the contention of the appellant that the permission given by the conductor to the respondent to look over the engine was no license or authority for

him to crawl under the trucks of the engine for the
purpose of repairing the truck cellar, and that the
doing so, at night, without notifying those in charge
of the train of his intention to do so, was such con-
tributory negligence as would preclude a recovery on
his part.

We fully concur in this contention of appellant.
There was nothing in the words of the conductor which
could possibly be tortured into a permission to go
under the engine to make repairs, which perchance
might be discovered upon an examination.

There is nothing in the petition which shows that
the servants in charge of the train had any reason
whatever to apprehend that respondent would assume
a place of danger by inspecting the engine, or that he
was in a place of danger at the time the cars were
pushed back against those attached to the engine under
which he was working.

To assume such a dangerous position without
notifying the trainmen of his intention to do so can
be denominated nothing less than gross negligence of
the most reckless character. Any man of ordinary
prudence, possessing due regard for his own safety,
would have gone when he discovered the defective
truck cellar to the conductor or other proper person
in charge of the train and notified him of the trouble,
and asked permission to go under the engine to make
the necessary repairs, or have notified him of his inten-
tion of doing so. Having failed to state either of
those facts in his petition, we are of the opinion that
it shows upon its face that respondent was guilty of
such contributory negligence that he cannot recover.

We do not understand learned counsel for respond-
ent to really controvert the correctness of the con-
clusions above stated; but to insist that when the con-
ductor gave respondent permission to look over his
engine such permission when given and accepted by

railroad men also carried with it permission to repair all defects discovered in pursuance to the examination so made, and respondent introduced some evidence over the objection of appellant which tended to prove that contention.

If it be true that the granting of such permission also carries with it permission to make the necessary repairs that might be discovered and that such was the understanding of the parties giving and accepting the permission, then such facts should have been alleged in the petition; and having failed to do so, we have no hesitancy in holding that it failed to state a cause of action. But since counsel for respondent proceeded upon the theory that he could make that proof without pleading the facts and seems to have some merit in his case, we will reverse the judgment and remand the cause with direction to the circuit court to permit respondent, if he sees proper, to amend his petition by alleging the matters before suggested, and grant him another trial.

Ordinarily this would fully dispose of the case in this court, but, as the cause must be retried, we deem it proper to pass upon some additional questions presented by the record, for the reason that they will be presented again to the trial court for decision; and by expressing our views upon those questions at this time, it may serve to prevent another appeal of this case to this court.

II. The next insistence of the appellant is that the action of the court in refusing its instruction in the nature of a demurrer to respondent's evidence was reversible error.

This contention is based upon the fact the petition alleges that he was in the employ of the Houck's Missouri & Arkansas Railway Company and was injured through the negligence of its agents and servants, while the evidence showed that he was in the

service of the St. Louis, Kennett & Southern Railroad Company and was injured by its employees, which rendered the latter company, if anyone, liable for his injury. In other words, that there was a total variance between the allegation of the petition and the proof. While it is true the evidence shows that the two roads mentioned were distinct and separate corporations, yet it further disclosed the facts that they were parts of one general railroad system, which was operated under one general management, and that plaintiff was subject to the orders of that management. It is also true that respondent was employed by the master mechanic of the St. Louis, Kennett & Southern Railroad Company; that his services were generally performed for that company; that he received his pay from it. Those facts constituted respondent an employee of the latter company in the first instance, but when the general manager of the entire system ordered him to leave that road and take his disabled engine, which was the property of respondent, to the repair shops at Cape Girardeau, over the Houck's Missouri & Arkansas Railway, then quite a different proposition is presented. Clearly he was not a passenger upon the latter road, for the reason he was still in charge of and caring for his disabled engine, as much so as was the engineer of the engine which was drawing the train at the time of the accident in charge of his. He was likewise subject to the orders and as much under the control of the conductor of that train, who was an employee of respondent, as was the engineer thereof.

In the light of all this evidence, we are unwilling to declare as a matter of law that the respondent at the time he was injured was not an employee of the appellant but was an employee of the St. Louis, Kennett & Southern Railroad Company. While the evidence is somewhat meager and unsatisfactory upon

this question, yet we are of the opinion that there was sufficient evidence tending to prove respondent at the time of the injury was an employee of appellant to warrant the court, under proper instructions, in submitting that question to the jury.

In this same connection appellant also insists that the court should have sustained its demurrer to the evidence, for the reason that respondent's evidence showed he was guilty of such contributory negligence as should preclude a recovery in this case.

This question is closely related to the question of pleading considered in the first paragraph of this opinion, and much of what is there said applies with equal force to the question now under consideration; but, as there shown, the defective condition of the pleadings upon this question prevented its proper presentation to the court and jury, and for that reason we thought that the judgment should be reversed and the cause remanded for a new trial, in order that this question might be more fully and properly presented by the pleadings and the evidence.

Under the present state of the pleadings, of course the demurrer to the evidence should have been sustained, but we cannot in advance anticipate fully what the evidence will be upon another trial after the pleadings have been amended.

III. The action of the court in admitting evidence over appellant's objections is bitterly assailed.

Respondent introduced evidence tending to prove that all the roads mentioned constituted one entire railway system, known as the "Houck System," with Mr. Louis Houck at its head, and general manager; the relation each of said roads bore to each other; what charge and control Louis Houck and other officers of the various roads had over respondent; the relation the repair shops bore to each company and to

the "Houck System;" the person and company who employed respondent in the first instance, and his duties and where performed; the ownership of the engine which respondent had charge of and by which he was injured; by whom his services were paid for, etc. This evidence was properly admitted. The question for whom respondent was working at the time of the injury was one of fact, to be determined by the jury from all the facts and circumstances in the case. All of those facts and circumstances tended to throw light upon that important question, and they should be considered by the jury in passing thereon.

IV. Appellant lodges many objections against the instructions given by the court in behalf of the respondent.

Instruction numbered one given for respondent is objected to for the reason that it assumed certain matters stated therein to be true, while, as a matter of fact, they were undisputed. We are of the opinion that the instruction is erroneous, for the reasons stated; and at the next trial the instruction should be so amended as to submit those matters to the jury to pass upon, and not assume them to be true. [Thompson v. Botts, 8 Mo. 710; Wilkerson v. Eilers, 114 Mo. 245.]

Instruction numbered two given for respondent is clearly erroneous. It authorized the jury to find for respondent even though they found he was not an employee of appellant at the time he was injured. That was a clear departure from the issues presented by the petition. It states that respondent was an employee of appellant at that time, while the instruction authorizes a recovery even though that fact was not true. That was reversible error. [Milliken v. Commission Co., 202 Mo. l. c. 654.]

V.　It was not error for the court to refuse appellant's instruction marked "F," for the reason there was no evidence upon which to base it.　It is error to give an instruction which is not based upon the evidence.　[Paddock v. Somes, 102 Mo. 226.]

VI.　As the judgment must be reversed and the cause remanded for the reasons before stated, it becomes unnecessary to pass upon the question regarding the newly-discovered evidence set up in the affidavits in support of the motion for a new trial.

The judgment is reversed and the cause remanded for a new trial in conformity to the views herein expressed.

All concur, except *Valliant, P. J.,* absent; *Graves, J.,* expresses no opinion on the propriety of the amendment suggested in the opinion.