CHARLES G. LUFT v. JOHN STROBEL ET AL., Appellants—19 S. W. (2d) 721.

Division One, May 18, 1929.

*W. G. Carpenter* for appellants.

*George Eigel* and *John V. Lee* for respondent; *James T. Roberts* of counsel.

SEDDON, C.—This action was commenced in the Circuit Court of the City of St. Louis on June 29, 1922, against the defendants, John Strobel, Lucas Haefner and William M. Edinger, to recover upon a promissory note executed by the three defendants and by one W. F. Korte, as makers, and dated December 22, 1921, whereby the makers of said note promise to pay to the order of plaintiff, Charles G. Luft, ninety days after the date of said note, the principal sum of $1000, with interest at seven per cent per annum from date until paid. The note, by its terms, authorizes any attorney of any court of record to appear in such court, in term time or vacation, and confess judgment in favor of the holder of said note for such amount as may appear to be unpaid thereon, together with costs and reasonable attorneys' fees.

The petition is conventional in its allegations. The joint answer of defendants pleads, in defense of the plaintiff's action, that the note in suit was executed and delivered without consideration, and that said note was given in renewal of other alleged fraudulent and void notes of a corporation known as the Savidge Tractor Company, which notes were without any real or adequate consideration and were the outgrowth of an alleged fraudulent promoters' agreement respecting the organization of the named corporation, the facts respecting which fraudulent agreement and transaction are alleged to have been unknown and undisclosed to the defendants at the time of the execution and delivery of the renewal note in suit. The defendants, by way of counterclaim, seek to recover of and from plaintiff the sum of $10,176.59, alleged to have been innocently paid by defendants to plaintiff, and to certain associates of plaintiff, all of whom were engaged in a joint undertaking on the part of plaintiff and his said associates to fraudulently promote a corporation known as the Savidge Tractor Company, and which sum is alleged to have been obtained from the defendants by plaintiff and his said associates by reason of the alleged conspiracy, fraudulent acts, misrepresentations and concealment of plaintiff and his said associates, which acts, facts and circumstances are set out and alleged with particularity in the counterclaim, and for the repayment and return of which sum of money the plaintiff and his said associates are alleged to be jointly and severally liable to the defendants. The reply is a general denial of the averments of the answer and counterclaim of the defendants.

The cause was submitted to the jury upon both the plaintiff's petition and the defendants' counterclaim. The jury returned a unanimous verdict, finding the issues for plaintiff upon his petition, and allowing plaintiff an aggregate recovery of $1734.25 upon the promissory note in suit, which aggregate amount includes the sum of $1000, the principal of said note; $284.25, the accrued interest thereon; and $450, as attorneys' fees. The jury, by their verdict, found in favor of plaintiff and against the defendants upon defendants' counterclaim. After an unavailing motion for a new trial, the defendants were allowed an appeal to this court. We take jurisdiction of the appeal because of the amount ($10,176.59) sought to be recovered by defendants from plaintiff upon the counterclaim, which amount exceeds the minimum of the pecuniary jurisdiction of this court. [Conrad v. De Montcourt, 138 Mo. 311, 321.]

From a voluminous abstract of the evidence we gather the following facts: William Savidge, a mechanic, who resided in Alton, Illinois, obtained the issuance of letters patent from the United States Government, dated September 18, 1917, upon an invention described as ''new and useful improvements in tractors.'' The inventor, Savidge, being a man of limited pecuniary means, required

financial assistance in order to manufacture tractors under the letters patent issued to him. He succeeded in interesting in his invention several persons who resided at, or near, Alton, Illinois. These persons, six in number, included Charles G. Luft (the plaintiff herein), R. H. Dalby, Henry Knufinke, John Relleke, Fred Strackeljahn, and Franklin L. Wilson. Of these six named persons, all were farmers, with the exception of Charles G. Luft, who operated a blacksmith shop in Alton, Illinois, and Henry Knufinke, who operated a grocery store, and with the possible exception of Franklin L. Wilson. who appears to have been a young man possessed of some financial resources. Each of the six named persons appears to have originally invested approximately $500 in the project. An additional sum of money was invested by some, and perhaps by all, of the six persons, but the evidence tends to show that the aggregate sum of money invested by the six named persons in the project was approximately $5500. This aggregate sum of $5500 was expended in the manufacture of the castings, or parts, and in the assembling, of two small tractors, which work of assembling the two tractors appears to have been done in the blacksmith shop owned and operated by Charles G. Luft, the plaintiff herein. The relationship of the six named persons in the project is denominated by some of the parties as a partnership, or as a voluntary association, and each of the six named persons seems to have had, or to have believed that he had, an undivided interest in the letters-patent issued to Savidge upon his invention. The money thus invested in the project was soon expended, and the named persons were unwilling to advance, or to invest, additional money in the project, and the prosecution of the project came to a standstill.

In February, 1919, R. H. Dalby was put in touch with a firm of so-called "brokers" in the city of St. Louis, operating under the firm name of "Burnett & Company." Whether the so-called "brokerage" firm of Burnett & Company was an individual, a partnership, or an incorporated entity, does not appear from the record herein, nor does the nature and character of the firm business appear from the evidence. It does appear from the evidence, however, that the active and guiding spirit in the so-called "brokerage" firm of Burnett & Company was one Charles M. Backus. On a Sunday morning in February, 1919, a meeting was held in the office of Burnett & Company, in the Pierce Building, in the city of St. Louis, at which meeting were present the following: Charles G. Luft (the plaintiff herein), R. H. Dalby, William Savidge, Henry W. Knufinke, John Relleke, and Fred H. Strackeljahn, representing the persons interested in the exploitation of Savidge's invention; and E. C. Burnett and Charles M. Backus, representing Burnett & Company. A contract or agreement, dated February 8, 1919, was there

written and signed by Charles G. Luft, R. H. Dalby, William Savidge, Henry W. Knufinke, John Relleke, and Fred H. Strackeljahn, as parties of the first part, and by Burnett & Company, as parties of the second part. The contract or agreement so signed and entered into by the above-named parties was as follows:

"This contract made and entered into this eighth day of February, 1919, by and between Charles G. Luft, R. H. Dalby, Wm. Savidge, and Franklin L. Wilson, all of Alton, Illinois, H. W. Knufinke, of Nameoki, Illinois, and John Relleke and Fred Strackeljahn, both of Granite City, Illinois, parties of the first part, and Burnett & Company, of the City of St. Louis, Missouri, parties of the second part:

"Witnesseth, whereas, parties of the first part, as they hereby represent, are the owners of what is known as the William Savidge invention of new and useful improvements in tractors and the letters-patent of the United States for said invention issued to said William Savidge, numbered 1,240,782, and dated September eighteenth, 1917, and also own the two tractors mentioned below and certain tracings, drawings, patterns, etc., made for use in the building of tractors under said patent, and parties of the first part desire to sell and transfer said invention and patent, as well as the said two tractors, tracings, drawings and patterns above mentioned, to parties of the second part for the consideration and upon the terms and conditions hereinafter set forth.

"1. Now, therefore, parties of the first part, for and in consideration of the premises and of the sum of one dollar and other good and valuable considerations to them paid by parties of the second part and of the agreements to be performed by parties of the second part as set out below, have sold, assigned, conveyed and transferred, and by these presents do sell, assign, convey and transfer, to parties of the second part, the invention aforesaid and the entire rights therein and also the said Letters-Patent of the United States, numbered 1,240,782 and dated September eighteenth, 1917, as aforesaid, together with the whole and entire title to rights and interest in said Letters-Patent, and also the two tractors above mentioned, heretofore manufactured under said patent, being the same two tractors now at the shop of the Savidge Welding Company, 414 Belle Street, Alton, Illinois, and together with all the attachments and appurtenances used in connection with or in any wise belonging to or forming a part of said two tractors; and also all the tracings, drawings, plans, specifications, patterns and parts and pieces of machinery of every kind, etc., in the possession of parties of the first part and designed for use in the construction of said patented tractor or any of its parts.

"2. As further consideration for the said sale, transfer and conveyance to them of the invention, patent, two tractors, tracings, drawings, plans, specifications and patterns aforesaid, parties of the

second part hereby contract and agree that they will, as soon as may be reasonably done, cause a corporation with an authorized capital stock of One Million Dollars ($1,000,000), divided into one hundred thousand shares of the par value of Ten Dollars ($10) each, to be duly organized and incorporated, to which corporation they (parties of the second part) will transfer and convey the said invention, patent, tractors, tracings, drawings, plans, specifications and patterns; and parties of the second part will cause said corporation to issue in exchange therefor such an amount of the capital stock of the corporation, full-paid and non-assessable, as may in their judgment represent the fair value of said invention, patent, tractors, tracings, drawings, specifications and patterns.

"The corporate name of said corporation is to be Savidge Tractor Company, if such name is available for use under the laws of the state in which it shall be incorporated, but if such name is not available then the corporate name shall be such as parties of the second part may determine upon.

"Promptly following the completion of the organization and incorporation of said corporation, parties of the second part will cause Seventy-Five Thousand Dollars ($75,000) par value of its capital stock to be issued, full-paid and non-assessable, to parties of the first part, same to be divided between parties of the first part in such proportion as they may designate; and parties of the second part will also, promptly following the organization and incorporation of said corporation, cause said corporation to make and deliver to parties of the first part notes of said corporation to the amount of Twenty Thousand Dollars ($20,000), in such denominations and payable to such payees as may be designated by parties of the first part, said notes to be drawn payable on or before six months after date and bear interest from maturity at the rate of six per cent per annum; it being understood and agreed that said Seventy-Five Thousand Dollars ($75,000) stock of said corporation and said Twenty Thousand Dollars ($20,000) in notes are to be accepted by parties of the first part as full and complete payment and consideration for the invention, patent, two tractors, tracings, drawings, plans, specifications and patterns and parts and pieces of machinery hereinbefore by this instrument sold, assigned, transferred and conveyed to the parties of the second part.

"Witness our signatures to two duplicate originals hereof, this eighth day of February, 1919."

Franklin L. Wilson was not present at that meeting, and the written instrument was taken to Alton, Illinois, in order to procure Wilson's assent and signature thereto. Wilson, however, refused to sign the instrument, and Charles G. Luft (plaintiff herein) subsequently purchased from Franklin L. Wilson, for $700 in cash paid

by Luft to Wilson, whatever share or interest Wilson had in the letters-patent and in the joint project of exploiting the invention of Savidge.

A day or two after the execution of the aforesaid written contract, Charles M. Backus solicited the several parties who had signed the contract as parties of the first part to contribute money to defray the expenses of incorporating the corporation contemplated by the said written contract, but those parties refused to contribute any money. Thereupon Charles M. Backus caused to be sold to various buyers so-called "preincorporation certificates," which certificates, according to their terms, purported to entitle the respective purchasers and holders of such preincorporation certificates to "stock fully paid and non-assessable of the par value of twice the amounts advanced by them, respectfully, in a corporation to be organized to manufacture and sell said tractor, with an authorized capital stock of One Million Dollars ($1,000,000), all common, par value of shares, Ten Dollars ($10) each." These preincorporation certificates, according to the testimony of Dalby, were "peddled on the streets of Alton, and peddled on the streets of St. Louis." Charles M. Backus was assisted, to some extent at least, in the sale of the preincorporation certificates by Charles G. Luft (plaintiff herein) and R. H. Dalby. Such certificates were sold to some 500, or more, individuals, and $50,000, or more, in cash was paid to Charles M. Backus, or to Burnett & Company, in exchange for such preincorporation certificates. The money raised from the sale of the preincorporation certificates, according to the terms of some of the certificates, was "to be used toward the purchase of Lots 14, 15 and 16, in Block 4, of Hunter's or Russell's Addition to the City of Alton, State of Illinois, and the improvements thereon, together with such materials and supplies as may be necessary and requisite in the manufacturing of the Savidge Tractor, or for such other purpose as the said C. M. Backus may, in his judgment, deem most advisable." Another form of preincorporation certificate so sold recited that the money derived from the sale thereof was "to be used for the purpose of demonstrating the utility of what is known as the Savidge Tractor, and generally to defray expenses in any wise incurred in advertising, developing and promoting the handling, manufacturing and sale of said tractor." What use Charles M. Backus made of the $50,000, or, more, in cash realized from the sale of such preincorporation certificates, is not clearly shown by the evidence herein; nor does the evidence clearly disclose whether the $50,000 in cash was used by Backus toward any of the purposes expressed on the face of such preincorporation certificates. It is reasonably and fairly to be inferred from the evidence herein, however, that the $50,000 in cash was dissipated in some manner, and was never represented by any

tangible asset of the corporation subsequently organized by Backus in pursuance of the contract of February 8, 1919. The defendants herein, Strobel, Haefner and Edinger, were among the 500, or more, individuals who were induced to buy, and to whom were delivered, such preincorporation certificates.

On October 23, 1919, Charles M. Backus, or Burnett & Company, in pursurance of the written contract of February 8, 1919, by and between the six exploiters of the Savidge invention and Burnett & Company, caused to be filed with the Secretary of State of Delaware articles of agreement and of incorporation, for the purpose of incorporating a corporation under the corporation laws of the State of Delaware, bearing the corporate name of "Savidge Tractor Company," with a present capital stock of $1,000, and with an authorized capital stock of $1,000,000, divided into 100,000 shares of the par value of $10 each. The names and places of residence of the original purported subscribers to the capital stock of said Delaware corporation, and the number of shares purporting to have been subscribed for by each, are set out in the articles of incorporation as follows: T. L. Croteau, Wilmington, Delaware, 98 shares; C. L. Rimlinger, Wilmington, Delaware, 1 share; and C. H. Blaske, Wilmington, Delaware, 1 share.

On October 24, 1919, certificates of stock, signed by Frank M. Peyton, as president, and George O. Osterkamp, as secretary, of the Savidge Tractor Company, were issued to each of the following persons: Frank M. Peyton, A. C. Backus, and George O. Osterkamp, Each certificate entitled the party to whom it was issued to 33⅓ shares of the capital stock of the Delaware corporation. A. C. Backus is the father of Charles M. Backus, and Frank M. Peyton and George O. Osterkamp appear from the evidence herein to have been instruments, or "dummies," of Charles M. Backus, both being then in the employ of Charles B. Backus.

On October 30, 1919, certificates of stock were issued by the Savidge Tractor Company to the following persons: William Savidge, 2295 shares; Charles G. Luft, 1650 shares; R. H. Dalby, 1305 shares; Fred Strackeljahn, 750 shares; H. W. Knufinke, 750 shares; and Franklin Wilson, 30 shares. Those certificates were signed by Frank M. Peyton, as president, and by George O. Osterkamp, as secretary, of the Savidge Tractor Company. On October 31, 1919, six promissory notes of the Savidge Tractor Company, aggregating $20,000 in amount, and payable six months after date, were issued and delivered to the following, as the respective payees, and in the following respective amounts: Henry W. Knufinke, $2000; Fred H. Strackeljahn, $2000; John Relleke, $2000; R. H. Dalby, $3,480; William Savidge, $6120; and Charles G. Luft, $4400. All of those promissory notes were signed, "Savidge Tractor Company, by Charles

M. Backus, president," as the maker of said notes. The certificates of stock and promissory notes, aforesaid, were delivered to the respective parties above named in pursuance of the contract or agreement between said named parties and Burnett & Company, dated February 8, 1919.

The evidence tends to show that no meeting of the stockholders or subscribers to the capital stock of the Savidge Tractor Company was ever called or held prior to the issuance and delivery of such certificates of stock and promissory notes of said corporation. No election of directors of the Delaware corporation appears to have been held by the stockholders or subscribers, and how either Peyton or Backus became president of the Delaware corporation is not disclosed by the evidence herein, or by any record of the corporation. Nor does the evidence herein, or any record of the corporation, disclose any authorization or ratification, by the stockholders or subscribers of said corporation, of the issuance and delivery by the corporation of the $20,000 in promissory notes of the corporation, dated October 31, 1919. None of the 500, or more, individual buyers and holders of preincorporation certificates, including the defendants herein, appear to have been notified of, or to have authorized, that transaction. The evidence discloses that no certificates of stock of the Savidge Tractor Company were issued to any of the buyers and holders of preincorporation certificates until after the consummation of the aforementioned transaction, or until January 28, 1920, some three months thereafter, so that it appears quite conclusively from the evidence that the only persons who participated in, or who had any knowledge of, the issuance and delivery of the promissory notes and stock certificates of the Delaware corporation in October, 1919, were the several parties to the written contract or agreement of February 8, 1919, and their respresentatives, instruments, or "dummies," in that corporation, A. C. Backus, Frank M. Peyton and George O. Osterkamp.

The evidence tends to show that the Savidge Tractor Company functioned as a corporation for only a few months at most, and it is doubtful, under the evidence herein, whether the corporation ever carried on any real business pursuit authorized by its charter and articles of incorporation. As aptly stated by the witness, Dalby, "the Savidge Tractor Company stopped business, to my knowledge, when it ceased selling stock in the early part of 1920." In other words, the evidence fairly warrants the inference that the sole purpose and object of the several promoters of the Savidge Tractor Company was to sell to unsuspecting and innocent purchasers the stock of that corporation, which never had any real or substantial value.

In February, 1920, a short time after the incorporation of the Savidge Tractor Company, Charles M. Backus caused to be incorporated, under the laws of the State of Illinois, another corporation, bearing the name of "Backus Tractor Company." This Illinois corporation purported to have been organized for the purpose of manufacturing "Baby Savidge Tractors" under a ten-year license which Backus purported to have held, or to have reserved to himself, under the letters-patent issued to William Savidge. The defendants herein appear to have been purchasers of stock in the Backus Tractor Company, and to have invested about $14,000 in that Illinois corporation. The latter corporation seemingly manufactured, or assembled, several "Baby Savidge Tractors," but it does not appear from the evidence herein that any money was realized from the sale of the tractors. It does appear from the evidence that, while one or two of the tractors were "sold," as stated by some of the witnesses, they were returned by the "purchasers" to the Backus Tractor Company because of some defect in their operation. Savidge, the inventor, testified: "Economically, they were wrong, too hard to build; the building of the joints, forming part of the original patent, was so costly, it (the tractor) could not be manufactured economically." Viewing the evidence in its entirety, the evidence strongly indicates that the Savidge patent or invention was practically worthless, at least insofar as its commercial utility or adaptability is concerned.

The evidence further tends to show that the defendants were merchants, operating on a small scale, in the city of St. Louis, and had little, if any, familiarity with the manufacture of tractors. They were persuaded and induced, through Charles M. Backus or R. H. Dalby, to buy preincorporation certificates in the prospective Savidge Tractor Company, and it appears from the evidence that no information or disclosure was made by the promoters of that corporation to any of the defendants respecting the written contract or agreement entered into by and between the six exploiters of the Savidge invention and Burnett & Company on February 8, 1919; nor were defendants informed that, by the terms of said written agreement, the six exploiters of the Savidge invention were to receive approximately $75,000 par value in stock and $20,000 in promissory notes of the prospective corporation.

The $20,000 in notes of the Savidge Tractor Company, which were delivered to, and distributed among, the six exploiters of the Savidge invention, matured on April 30, 1920. They were never paid by the Savidge Tractor Company. Among such $20,000 in notes was a promissory note of the Savidge Tractor Company for $4400, payable to Charles G. Luft, the plaintiff herein, which note had been delivered to plaintiff as his share in the distribution of the $20,000

in notes of the Savidge Tractor Company. On December 4, 1920, Charles M. Backus induced and procured the defendants herein to endorse $20,000 in new notes of that date, all executed by Charles M. Backus, as maker, which new notes were delivered to the six holders of the $20,000 in notes of the Savidge Tractor Company, in exchange for, and in renewal of, the original notes of the Savidge Tractor Company. Two of these new notes, dated December 4, 1920, were in the sum of $2200 each, payable respectively six months and one year after date to the order of Charles G. Luft, plaintiff herein, and were given in exchange for, and in renewal of, the original note of the Savidge Tractor Company for $4400 payable to the plaintiff, Luft, as his share in the distribution of the original $20,000 in notes of that corporation. The evidence tends to show that Charles M. Backus led the defendants to believe that the $20,000 in notes issued by the Savidge Tractor Company and delivered to the six exploiters of the Savidge invention were authorized, valid and binding obligations of that corporation, and that the holders of those notes were threatening to bring a suit, or suits, for the collection of said notes unless the notes were paid or renewed, and that defendants' investment in the Savidge Tractor Company, and in the Backus Tractor Company, would be jeopardized or entirely lost in the event that suit were brought and recovery were had upon the said $20,000 in notes of the Savidge Tractor Company. Some time prior to the maturity of the renewal notes which had been endorsed by the defendants herein, Charles M. Backus suddenly left St. Louis, without announcing his departure or destination, and his present field of operation is unknown to any of the parties herein, although it was rumored that he went to the State of California. At any rate, Backus apparently has never returned to St. Louis to face the unfortunate victims of his corporate promotions.

The evidence further tends to show that the defendants, without information or knowledge on their part of the recited circumstances, or of the agreement respecting the issuance of the original $20,000 in notes of the Savidge Tractor Company and the delivery and distribution of such notes among the six exploiters of the Savidge invention, paid some of the renewal notes which they were induced to endorse by Backus, and the defendants renewed others of said renewal notes by giving new notes in their stead, among which is the note sued upon by plaintiff herein. The defendants paid one of the $2200 notes, dated December 4, 1920, so delivered to and held by plaintiff, and made a payment of $1200 upon the other $2200 note, and gave to plaintiff their renewal note for $1000, dated December 22, 1921, payable to the order of plaintiff ninety days after date, which latter note is the one now in suit.

The plaintiff herein, Charles G. Luft, testified that the aggregate amount of money invested by him in the exploitation of the Savidge invention was $1200, in return for which plaintiff received the original $4400 note of the Savidge Tractor Company, together with a certificate representing 1650 shares of the capital stock of that corporation. Plaintiff testified further that he has been paid $3400 in cash by the defendants, in reduction, and as partial payment, of the original $4400 note of the Savidge Tractor Company, leaving an unpaid balance of $1000, represented by the note now in suit. Plaintiff's own testimony discloses that plaintiff has profited by the transaction, and by the written agreement between Burnett & Company and the six exploiters of the Savidge invention, to the extent of at least $2200. In other words, plaintiff has received $2200 in cash over and above his original investment of $1200 in the exploitation of the Savidge invention, which invention appears from the evidence herein to have had no real or substantial value. On the other hand, the evidence well-nigh conclusively shows that the defendants have received nothing of value in return for their original investment of $14,000 in the Savidge Tractor Company and in the Backus Tractor Company, besides having paid a considerable sum of money upon the original $20,000 in notes of the Savidge Tractor Company, which notes were distributed among plaintiff and his associates, as the exploiters of the Savidge invention.

The evidence further tends to show that the corporate records of the Savidge Tractor Company, (if, indeed, there ever existed any corporate records of that Delaware corporation) were kept at the home of Charles M. Backus and concealed from the purchasers of the preincorporation certificates sold by Backus and by Burnett & Company. In other words, the evidence herein strongly indicates that information respecting the agreement between the six exploiters of the Savidge invention and Burnett & Company was designedly concealed and withheld by the parties to that agreement from the 500, or more, purchasers of preincorporation certificates, including the defendants herein, and that the acts of the "dummy" officers and directors of the Savidge Tractor Company (all of whom were employees and mere instruments of Charles M. Backus, acting under his domination) in issuing and delivering to the six exploiters of the Savidge invention, for distribution among said exploiters, the $20,000 in notes of the Savidge Tractor Company, were not disclosed to the defendants and to other purchasers of the preincorporation certificates, and if such acts of the "dummy" officers and directors of the Savidge Tractor Company were ever recorded upon the records of the corporation, such records were withheld and concealed by Backus from the persons to whom the preincorporation certificates were sold, including the defendants herein.

I. The appellants (defendants) assign error on the part of the trial court in the giving of certain instructions on behalf, and at the request, of plaintiff (respondent). Respondent contends, however, that such errors, if any there be, were harmless, inasmuch as the trial court should have peremptorily instructed the jury, as a matter of law, to return a verdict in favor of the plaintiff upon plaintiff's petition, and also upon defendants' counterclaim. Plaintiff requested the trial court to give such a peremptory instruction at the close of all the evidence, which peremptory instruction was refused by the trial court. If plaintiff was entitled to a peremptory instruction requiring and directing the jury to return a verdict in favor of plaintiff upon the issues presented by both the petition and the counterclaim, then, of course, the errors in the giving of instructions complained of by defendants are harmless, for the jury, by their verdict herein (which was in favor of plaintiff), reached the same result as though they had been peremptorily instructed to return a verdict for plaintiff. Therefore, we will first discuss and rule the claim of plaintiff-respondent that the trial court should have peremptorily directed a verdict in his favor upon all the issues presented and joined by the pleadings.

The instant action is one of several actions arising out of the same transaction, and wherein recovery has been sought upon the several separate promissory notes of the defendants herein given in renewal of the $20,000 in notes purporting to have been originally executed and delivered by the Savidge Tractor Company, and distributed among the six exploiters of the Savidge invention. One of the several actions arising out of the aforesaid transaction was commenced by Henry Knufinke against these same defendants in the Circuit Court of the City of St. Louis to recover upon a promissory note of these defendants in the sum of $1000, payable to Henry Knufinke, and given in renewal of a note for $2000 purporting to have been issued to Knufinke by the Savidge Tractor Company on October 31, 1919, and which note was one of the original $20,000 in notes of the Savidge Tractor Company distributed among the six exploiters of the Savidge invention. The defendants answered in the Knufinke suit, pleading, as a defense to the note there in suit, fraud and failure or want of consideration. No counterclaim was filed by defendants in that action, but the answer therein raised the same defenses to the note in suit as the answer of defendants in the instant action. The evidence adduced in the Knufinke action appears to have been practically identical with the evidence adduced in the instant action. The trial court peremptorily directed a verdict for plaintiff in the Knufinke action, and judgment having been entered upon the directed verdict, the defendants were allowed

an appeal to the St. Louis Court of Appeals. That court, in holding that the trial court erred in peremptorily directing a verdict for plaintiff therein, and that defendants' answer therein stated a good and sufficient defense to the note in suit, said (Knufinke v. Strobel, 3 S. W. (2d) 400, 404): "It is well settled that the promoters of a corporation occupy a fiduciary or quasi-trust relation toward the corporation when it comes into existence and toward the subscribers prior to its organization, as long as they are acting as promoters. While, ordinarily, promoters cease to be such when the corporation is fully formed and the business turned over to the directors, such is not necessarily the case. The promoters may continue to dominate, and the directors selected by the promoters, although legally the agents of the corporation, may be but the passive instruments of the promoters. [14 C. J. 253.] In the present case, Charles M. Backus, who represented all the promoters of the Savidge Tractor Company, obviously not only selected and controlled the directors and officers of the company, but he himself assumed to act as president of the company in issuing to the promoters the notes of the company. Plaintiff contends, however, that he and his associates were not promoters of the Savidge Tractor Company, but that they sold the Savidge patent to Burnett & Company, who became the promoters, and for whose conduct plaintiff and his associates were in no way responsible. This contention is manifestly untenable. The contract which plaintiff and his associates signed, though it purports to sell, assign, convey, and transfer to Burnett & Company the title to the patent, is nevertheless clearly a promotion contract. Burnett & Company did not pay, nor does the contract bind them to pay, plaintiff and his associates anything for the patent. It merely authorizes them to organize a corporation with an authorized capital stock of $1,000,000, under the corporate name of Savidge Tractor Company, and to cause the corporation when organized to issue and deliver to plaintiff and his associates $75,000 par value of its capital stock and $20,000 in promissory notes. The title to the patent was manifestly conveyed and transferred to Burnett & Company merely to expedite the promotion of the corporation. The evidence tends to show, or at least justifies a fair inference, that plaintiff and his associates knew that the Savidge patent was worthless when they entered into the promotion contract with Burnett & Company, and that they knowingly entered into this contract not to promote a corporation to do a legitimate business, but to promote a scheme to reap profits by the sale of worthless stocks to unsuspecting purchasers, and that the subsequent operations of Charles M. Backus were performed in the pursuit of this scheme, though it may be that, on account of the perfidy of Backus, the plaintiff and his associates did not get their full

share of the profits. We are constrained to hold that the learned trial court erred in peremptorily instructing the jury to return a verdict for plaintiff. From what we have said, plaintiff's objection that defendants' answer fails to state any defense is necessarily ruled against plaintiff.''

The plaintiff-respondent herein attacks the soundness of the reasoning and conclusions reached by the Court of Appeals in the Knufinke case, supra, and asserts that the contract or agreement of February 8, 1919, signed and entered into by and between the six exploiters of the Savidge invention and Burnett & Company, was in no sense a promoters' contract, or can properly and rightly be so construed, but that such contract clearly evidences an absolute sale and conveyance of the letters-patent upon the Savidge invention, together with all rights thereunder, to Burnett & Company by plaintiff and his associates; wherefore, it is claimed that plaintiff and his associates in the exploitation of the Savidge invention had nothing further to do with the subsequent acts, operations and conduct of Burnett & Company, or of Charles M. Backus. We do not so view the purpose and intent of that contract, and we fully agree with the construction given to the contract by the Court of Appeals in the Knufinke case, supra.

The written contract or agreement of February 8, ·1919, discloses upon its face that the six exploiters of the Savidge invention were to receive no present and immediate consideration for the purported conveyance and transfer of the Savidge invention and patent rights to Burnett & Company, but that their compensation and profits under the agreement were to be derived from, and were wholly dependent upon, the organization and incorporation of the contemplated and prospective corporation, with an authorized capital stock of $1,000,000, and the issuance and delivery to the six exploiters of the Savidge invention of $75,000 par value of the capital stock, and $20,000 in notes, of the prospective corporation. And what was the prospective corporation to get from the six exploiters of the Savidge invention in exchange for $75,000 of stock and $20,000 in notes of the corporation? Obviously, in the light of the evidence herein, nothing but the patent-rights in an invention of exceedingly doubtful and questionable value, in the prior exploitation of which invention the aggregate amount of money invested by the six exploiters was approximately $5500, and which investment was an utter and total loss to the several exploiters unless the Savidge invention and patent-rights could be foisted upon the prospective corporation. The evidence herein tends to show that Charles M. Backus and Burnett & Company, prior to the incorporation of the prospective corporation, sold preincorporation certificates to some 500, or more, individuals, including the defendants herein, purporting to entitle

the purchasers thereof to shares in the capital stock of the corporation, when incorporated, from the sale of which preincorporation certificates $50,000, or more, in cash was realized, and that such preincorporation certificates were sold and "peddled" with the knowledge, if not through the active participation, of several (including the plaintiff herein) of the six exploiters of the Savidge invention. The evidence further tends to show that the existence, and the nature and terms, of the contract between the six exploiters of the Savidge invention and Burnett & Company were never disclosed to the purchasers of preincorporation certificates; nor was the issuance and delivery to the exploiters of the Savidge invention of $75,000 par value of the capital stock, and $20,000 in notes, of the Savidge Tractor Company, immediately upon the incorporation of that company, authorized by any board of directors of the corporation chosen and selected by the holders and purchasers of the preincorporation certificates, who, in fact and in law, were the real stockholders, and the actual subscribers to the capital stock, of the corporation. The evidence discloses that such transaction was consummated long before any certificates of stock in the corporation were issued and delivered to the 500, or more, individual holders of the preincorporation certificates, without any notice or disclosure of such transaction to the holders of the preincorporation certificates; and the evidence further discloses that the transaction was accomplished through the medium of a "dummy" board of directors, not selected and chosen by the actual and real subscribers to the capital stock of the corporation, but selected and dominated by Charles M. Backus, acting for, and in behalf of, plaintiff and his associates, in order to carry out the contract between the six exploiters of the Savidge invention and Burnett & Company, and thereby to foist upon the corporation the valueless Savidge invention and patent, at a price and for a purported consideration which was secret, unknown and undisclosed to the real and actual subscribers to the capital stock of the corporation, and which was wholly unauthorized by any board of directors, or other officers, of the corporation selected by them.

In 7 Ruling Case Law, sections 50-52, pages 70-73, the term "promoters" is defined, and the relation, obligations and responsibilities of promoters toward the corporation and the subscribers to its capital stock, as established by judicial opinion, are thus clearly and accurately stated: "Promoters are the persons who bring about the incorporation and organization of a corporation. They bring together the persons interested in the enterprise, aid in procuring subscriptions, and set in motion the machinery which leads to the formation itself. Every person, acting by whatever name in the forming and establishing of a company at any period prior to the company, is considered in law as occupying a fiduciary relation towards

the corporation. He is a quasi-agent of the corporation, and is subject to the disabilities of such. . . . In a comprehensive sense, promoter includes those who undertake to form a corporation and to procure for it the rights, instrumentalities, and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do its business. Their work may begin long before the organization of the corporation, in seeking the opening for a venture and projecting a plan for its development, and it may continue after the incorporation by attracting the investment of capital in its securities, and providing it with the commercial breath of life. If a corporation has been organized and persons promoting it up to that time continue to act for it by inducing persons to come in and subscribe for its capital stock, their relation as promoters continues. . . . Promoters stand in a fiduciary relation to the company to be organized, and to those who subscribe for its stock. As such they are bound to act in good faith and to deal with them in perfect candor. . . . The promoter of a company, like its directors, is deemed to sustain toward the members of the company the relation of a trustee toward his *cestui que trust*. This being so, he will not be permitted to speculate out of that relation, or to derive any secret advantages from it. He is bound to disclose to them fully all material facts touching his relation to them, including the amount he is to get for his services as promoter, and he is liable in an action of fraud to persons who, by fraudulent representations, he induces to subscribe to the stock of the corporation to their injury. The character of a promoter does not necessarily cease when the corporation is organized to do business, but he may retain his fiduciary relation thereto until its capital stock shall have been taken and the corporation provided with a board of directors, or some reasonably efficient means of protecting its interests. And so long as there are prospective original subscribers for stock and the promoters and those concerting with them remain in control of the corporation, it is in a situation to be deceived, and the promoters retain their fiduciary relation thereto. Promoters of a corporation who are seeking to obtain secret profits out of transactions with or sales to it frequently in furtherance of their schemes either become members of its board of directors, or procure others to become such members who are devoted to their interests and cognizant of their intended frauds. Where this is the case, the fact that, after the organization of the corporation, the board of trustees so composed adopts or ratifies the fraudulent contract or purchase, creates no impediment to proceedings in the courts for redress. . . . The cases are numerous where promoters have undertaken to sell property to the corporation at an excessive price, and thereby obtain a secret profit. This is uniformly held to be a fraud on the corporation and

stockholders, and the promoters are required to account for such profit. The method by which the corporation is to be plundered can make little difference. It is the fact of doing so, by whatever method, that the law condemns. . . . If the scheme proves so far successful that the property is transferred to the corporation, and the purchase price paid, the sale may be set aside, or the persons receiving the profits may be required to account therefor.''

The relation of the several parties (including the plaintiff herein) to the contract or agreement of February 8, 1919, was unquestionably that of promoters of the Savidge Tractor Company, under the weight of juristic authority as expressed in the decisions of the courts of the several States, and under the decisions and rulings of this court dealing with like, or similar, facts and circumstances. [South Joplin Land Co. v. Case, 104 Mo. 572; Exter v. Sawyer, 146 Mo. 302; Brooker v. Trust Co., 254 Mo. 125.] It follows, therefore, that plaintiff and his associates occupied a fiduciary relation toward the Savidge Tractor Company, and toward the 500, or more, individual subscribers to the capital stock of that corporation, including the defendants herein, and were bound to make to the corporation, and to the subscribers to its capital stock, a full and fair disclosure of the existence, and of the nature and terms, of the contract or agreement of February 8, 1919, including the purported sale, conveyance and transfer of the patent rights to the Savidge invention, and the price, represented by stock and promissory notes of said corporation, to be paid, and which was paid, to plaintiff and his associates in exchange for the purported sale, transfer and conveyance of such patent rights. The evidence herein tends to show that no such full and fair disclosure was made by plaintiff and his associates to the subscribers to the capital stock of the Savidge Tractor Company, and, if such be the fact, then the $20,000 in original notes of the Savidge Tractor Company were issued and delivered to the plaintiff and his associates in fraud of the rights of the subscribers to the capital stock of that corporation, and such original notes of the corporation were issued and delivered to plaintiff and his associates without any real or adequate consideration moving from the payees of said notes to the corporation and its stockholders. In other words, such $20,000 in original notes of the Savidge Tractor Company were subject to the infirmities, and to the defenses, of fraud and of want or failure of consideration, so long as such notes were held by, and remained in the hands of, the original payees of said notes. The note now in suit (having been given in renewal of one of the original $20,000 in notes of the Savidge Tractor Company, and such renewal note being held by the plaintiff herein as the payee of one of said original notes) is subject to the same infirmities and to the same defenses as the original note, unless the defendants herein, as makers of such

renewal note, are shown to have had full knowledge of the defenses available against the original note at the time of the execution and delivery of the renewal note, and unless the defendants, having such knowledge, be estopped to assert, or be deemed to have waived, such defenses as against the renewal note now in suit. [Murphy v. Gay, 37 Mo. 536; Comings v. Leedy, 114 Mo. 454, 478.] The evidence on behalf of defendants tends to show that, at the time of the execution and delivery of the renewal note in suit herein, the defendants were not possessed of full knowledge of the facts and circumstances attending the issuance and delivery of the original notes of the Savidge Tractor Company, or of the defenses available against such original notes. Whether defendants had full knowledge of the defenses available against the original notes, at the time they executed and delivered to plaintiff the renewal note now in suit, was a question of fact to be submitted to the determination of the jury. Likewise, the evidence herein was amply sufficient to justify the submission to the jury of the several defenses against the note in suit, as pleaded and set out in defendants' answer. It follows, therefore, that plaintiff was not entitled to a directed verdict in his favor, and hence we must give consideration to appellants' claim and assignments of error.

II. Appellants assign error in the giving to the jury of plaintiff's Instruction 1, which reads as follows:

"If you find and believe from the evidence that, at the time defendants executed and delivered to plaintiff the note here sued on, plaintiff then and there surrendered and delivered to defendants  the other notes mentioned in the evidence, and that thereby defendants secured an extension of time, then under such circumstances, as a matter of law, the court instructs the jury that the extension of time of payment and the surrender of the other notes mentioned in the evidence is a sufficient consideration under the law for the execution and delivery of the note here sued on, and in that event and under such circumstances, if you do so find and believe from the evidence, you must render your verdict in favor of the plaintiff in the amount of the note sued on, together with seven per cent interest from date, and such sum as you may find and believe from the evidence is a reasonable attorney's fee, no matter what your findings may be with reference to defendant's counterclaim."

The aforesaid instruction purports to cover the entire case, and directs a verdict for plaintiff. Appellants complain that the instruction is peremptory and mandatory in form and language, and that it ignores the issues, and the several defenses to the note in suit,

raised and presented by defendants' answer. We think that appellant's complaint against the instruction is well grounded.

The instruction positively and emphatically told the jury that the surrender by plaintiff to defendants ''of the other notes mentioned in the evidence'' (that is, the original notes of the Savidge Tractor Company, dated October 31, 1919, and the several notes, dated December 4, 1920, given in renewal of such original notes), and the extension of time of payment of the surrendered notes, are sufficient consideration under the law for the execution and delivery of the note here in suit, and the instruction peremptorily directed the jury to return a verdict in favor of the plaintiff for the principal amount of the note in suit, together with interest thereon and a reasonable attorneys' fee, if the jury should find and believe that ''the other notes mentioned in the evidence'' were surrendered to defendants by plaintiff, and that thereby defendants ''secured [obtained] an extension of time of payment'' of the surrendered notes. The limited facts thus hypothesized in the instruction were undisputed by defendants, for defendants by their own evidence admitted and conceded the surrender of the earlier and original notes upon the execution and delivery of the renewal note in suit, the necessary and resultant effect of which, of course, was an extension of time of payment of the surrendered notes. But the issue which was sharply contested on the trial, and which was properly raised by the pleadings, and to which issue most of the evidence herein was directed, was whether the original notes of the Savidge Tractor Company, in renewal of which original notes the note here in suit was given by defendants, were fraudulently issued and delivered, and whether such original notes were issued and delivered without any real or adequate consideration, which infirmities in, and defenses to, the original notes, if established by the evidence, inhere and apply as well to the renewal note now in suit, under the law as established by the decisions of this court. Plaintiff's Instruction 1 wholly and completely ignores the controverted and sharply contested issue just stated, and does not require the finding by the jury of any of the essential facts in evidence bearing upon such controverted issue.

In Cassin v. Lusk, 277 Mo. 663, 673, we held it to be ''the established rule in this State, that an instruction which purports to cover the entire case and to direct a verdict, must contain within itself a submission of all the issues upon every phase of the evidence,'' and that any failure on the part of such an instruction in that respect constitutes reversible error. Again, in State ex rel. Funsten Co. v. Becker, 318 Mo. 516, we ruled that an instruction for plaintiff, which purports to cover the whole case and which directs a verdict in his favor, is fatally deficient if it does not require the finding

978

of all the essential facts in issue and controverted by and upon the evidence. To like effect is the ruling of this court, en banc, in State ex rel. Long v. Ellison, 272 Mo. 571, 583.

Plaintiff's Instruction 1 is fatally deficient under our rulings in the cited cases, and the giving thereof to the jury constitutes prejudicial and reversible error. Obviously, the jury could only have understood the instruction to be a peremptory and mandatory direction by the trial court to wholly disregard the real and controverted issue in the case, together with all of the evidence bearing thereon, and to return a verdict for plaintiff upon the mere finding of the limited facts hypothesized therein, which hypothesized facts were admitted and conceded by defendants on the trial. The giving of such instruction was tantamount to the trial court sustaining a demurrer to defendants' answer, and to defendants' evidence, and directing a verdict in favor of plaintiff regardless of the issues raised by the pleadings and the evidence. Because of the giving of such instruction, the defendants were as helpless at the hands of the jury as though the court had refused and denied them the right to proffer any evidence in their behalf.

III. Error is assigned by appellants in the giving to the jury of plaintiff's Instruction 2, as follows:

"Although the jury may find and believe from the evidence that defendants in the first instant purchased stock in the Savidge Tractor Company without any knowledge or means of knowledge that said corporation had theretofore issued its notes and a large amount of its stock for property of little or no value (if you do so find), nevertheless should you further find and believe from the evidence that *defendants afterwards, as stockholders, officers or directors of the corporation mentioned in the evidence managed and conducted the business and affairs of any or all of said corporation [s], and thus obtained, or could have obtained, full information concerning the matters and things mentioned in the evidence* before the execution and delivery of the note here sued on, *then in that event and under such circumstances you must render your verdict in favor of plaintiff in the amount of said note,* with interest at seven per cent from date, together with such sum as you may find and believe from the evidence is a reasonable attorney's fee for the collection of said note, *under the facts and circumstances mentioned in the evidence,* and *in favor of plaintiff on defendants' counterclaim.*" (Italics our own.)

Appellants urge that the instruction is indefinite, confusing and misleading, and insist that the giving thereof was highly prejudicial to the defendants in that the instruction is peremptory in form, and purports to cover the entire case, and directs a verdict for plaintiff

and against the defendants, both upon plaintiff's cause of action and upon defendants' counterclaim. The assignment of error is well grounded. There was no evidence that the defendants, or any of them, were officers or directors of the Savidge Tractor Company at any time, and, while defendants may be deemed to have been subscribers to the capital stock of the Savidge Tractor Company by reason of having been purchasers of the preincorporation certificates sold by Charles M. Backus and by Burnett & Company, yet the evidence further shows that no certificates of stock in the Savidge Tractor Company actually were issued to defendants until long after that corporation had issued and delivered to plaintiff and his associates the original $20,000 in notes of the Savidge Tractor Company. Plaintiff was permitted by the trial court, over the objections of defendants, to offer evidence of the incorporation (under the laws of the State of Illinois) of three other and different corporations, namely, Backus Tractor Company, Savidge Tractor Manufacturing Company, and Wonder Truck & Tractor Company, and plaintiff was further permitted, over the objections of defendants, to offer evidence that the defendants were, at some time, directors, officers and stockholders of one or more of the three named Illinois corporations. But the evidence shows that the three named Illinois corporations were separate and distinct entities from the Savidge Tractor Company; and the incorporation and corporate affairs and transactions of the three Illinois corporations, so far as the record discloses, were wholly unrelated to the Savidge Tractor Company. We find not the slightest evidence in the record before us tending to show that the status of defendants as stockholders, officers, or directors of one or more of the three Illinois corporations afforded, or could possibly have afforded, defendants any means of information or knowledge respecting the corporate affairs and transactions of the Delaware corporation, Savidge Tractor Company, or respecting the issuance of the original $20,000 in notes of the Savidge Tractor Company and the delivery of such original notes to plaintiff and his associates. The three Illinois corporations were all "mentioned in the evidence," however, and the fact was also in evidence that defendants were, at some time, stockholders, officers, and directors of one or more of the three named Illinois corporations. Hence, the italicized portion of the instruction was highly misleading and confusing to the jury, and doubtless led the jury to believe that the mere fact that defendants may have been stockholders, directors or officers of one or more of the three separate and distinct Illinois corporations "mentioned in the evidence" necessarily afforded to defendants the means of full information and knowledge of the corporate affairs and transactions of the Savidge Tractor Company. The instruction is also erroneous and prejudicial, in our opinion, because it assumes that

defendants, by reason merely of their status as stockholders, officers or directors of any of the several corporations "mentioned in the evidence," thereby (*thus*) "obtained, or could have obtained, full information concerning the matters and things mentioned in the evidence." Whether defendants obtained, or could have obtained from any source, full information concerning the issuance and delivery to plaintiff and his associates of the $20,000 in original notes of the Savidge Tractor Company was a controverted question of fact for the determination of the jury, and the assumption of such controverted fact in plaintiff's given instruction constitutes reversible error. [Crow v. Railway Co., 212 Mo. 589, 610; 38 Cyc. 1657-1659.] Likewise, the giving to the jury of a misleading and confusing instruction is held to be reversible error, especially where (as in the present case) the instruction purports to cover the entire case and directs a verdict for the party on whose behalf the instruction is given. [Stuart v. Dickinson, 290 Mo. 516, 559; 38 Cyc. 1602, 1603.]

The errors assigned by appellants and herein ruled are inherent in, and affect, the verdict returned, and the judgment rendered and entered in the circuit court, both upon plaintiff's cause of action and upon defendants' counterclaim. It follows, therefore, that the judgment of the circuit court should be reversed and the cause remanded for retrial, both upon plaintiff's petition and upon defendants' counterclaim. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.